UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gene J. Jedlowski,

    Plaintiff,

v.                                                                 Case No. 06-15695

Charter Township of Genesee,                    Honorable Sean F. Cox

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed this action alleging that his former employer terminated him in retaliation for having exercised his rights under Michigan's Workers' Compensation Act, M.C.L. § 418.301 *et seq.*, and the Family Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("the FMLA"), and interfered with his exercise of FMLA rights. The matter is currently before the Court on Defendant's Motion for Summary Judgment, which challenges Plaintiff's ability to establish a prima facie case with respect to his claim. The parties have briefed the issues and the Court heard oral argument on November 8, 2007. For the reasons set forth below, the Court shall DENY the motion.

**BACKGROUND**

Plaintiff Gene Jedlowski ("Plaintiff" or "Jedlowski") began working for Defendant Charter Township of Genesee ("Defendant" or "the Township") in 1997 as an inspector in its Department of Public Works. (Pl.'s Dep. at 16). Plaintiff inspected the infrastructure of the water and sewer lines and mains and remained in that position throughout his tenure with the

1

Township, until he was discharged on June 15, 2006.  (*Id*).

Keith Burch ("Burch") was Plaintiff's supervisor when he began working for the Township in 1997.  (Pl.'s Dep. at 16-17).  At that time, Plaintiff and Randall Waites ("Waites") both worked on the same level, as inspectors under Burch.  (*Id*. at 19).  Burch retired approximately two months before Plaintiff was terminated.  (*Id*. at 17).  Upon Burch's retirement, Waites was promoted and became Plaintiff's supervisor.  (*Id.* at 19).

Plaintiff was injured on the job in December 2005, while he was plowing snow with a pickup truck.  (Pl.'s Dep. at 19).  While plowing snow, Plaintiff hit a manhole cover, causing him to hit his head against the top of the truck.  Plaintiff did not immediately seek medical treatment or miss work after the incident.

In 2006, however, Plaintiff sought treatment for neck pain.  Plaintiff testified that he was diagnosed with four herniated discs in his neck and he started physical therapy in late March, 2006.  (Pl.'s Dep. at 20 & 29).  Up until that time, Plaintiff had not missed any work as a result of his injury.  (*Id*. at 29).

On or about May 3, 2006, Plaintiff's physician gave him a disability certificate for work that was given to the Township.  At that time, Plaintiff took leave from work and began receiving workers' compensation benefits.  (*Id*. at 30).

The Township asserts that on or about May 3, 2006 -- the same day that Plaintiff began his leave from work --his supervisor, Waites, "discovered in the CD player in the truck that had been driven by [P]laintiff a very disturbing and racial CD by a singer named Johnny Reb." (Def.'s Br. at 5).  Waites testified that he pushed the CD button upon entering the truck and then heard the highly offensive CD.  (Waites Dep. at 46).  He states that he turned it off and went

back to the Township and told Township Supervisor Scott Streeter ("Streeter") what had happened. (Waites Dep. at 47). Waites states that Streeter had him get Stephanie Hetherington ("Hetherington"), the acting union representative at the time. (*Id*. at 47). He did so and Hetherington briefly listened to the CD, and then removed it, placing it in a plastic bag. (*Id*. at 47 & 52). Waites testified that he associated the CD at that time with Plaintiff because of past statements that Plaintiff had made and because it was found in the truck that Plaintiff drove. (*Id*. at 47-48 & 53). Waites later sent a letter to Streeter, dated May 18, 2006, that stated:

> I am writing this letter as a notice to you and the Genesee Township Board. To inform you that on May 3rd. 2006, of finding a cd in the work truck used and driven by Gene Jedlowski while performing township work. The cd is of racial songs by Jonny Reb against black people, it is extremely vulgar and I will not tolerate any employee in my department playing this kind of a material on a cd in township property while on the job.
>
> I asked Stephanie Hetherington, who is the M.A.P.E. union Vice President to listen to the cd in the truck, I then asked her to take it out of the cd device and put in [sic] into a baggie with the date and license plate of the truck. I then gave you the cd to lock up for safe keeping.
>
> I am therefore calling, for the firing of Gene Jedlowski, I would like this brought before the Genesee Township Board and voted on as soon as possible.

(Ex. G to Def.'s Br.).

It is undisputed that Plaintiff received all workers' compensation benefits to which he was entitled for the time he was off work in May, 2006. The Township acknowledges, however, that Plaintiff "received two negative comments about his leave and workers' compensation benefits; those being a comment from Randall Waites that it wasn't right plaintiff was going off on medical leave and the other being Randall Waites request that plaintiff return to work." (Def.'s Statement of Undisputed Facts at ¶ 11).

With respect to the first statement, Plaintiff states that on or about May 1st, in referring to

3

Plaintiff's request for leave, Waites stated "it wasn't right." (Plaintiff's Dep. at 45). In his affidavit, Plaintiff states that when Waites made that comment he "used an exasperated tone of voice and was visibly upset." (Ex. 6 to Pl.'s Response).

With respect to the second comment, Plaintiff states that on or about May 23, 2006, while he was on leave, Waites called him and requested that Plaintiff return to work. He further states that after Plaintiff responded that he would have to check with his physician before returning to work, Waites "became very hostile towards [him] during the remainder of the conversation." (*Id.*; Pl.'s Dep. at 45-46).

Waites testified that during Plaintiff's leave Waites was the only one left in the department and it was busy. (Waites Dep. at 36).

Plaintiff was released to go back to work on June 6, 2006. (Pl.'s Dep. at 32). Plaintiff returned to work on June 6, 2006. (*Id*. at 35). On June 7, 2006, however, Plaintiff's father had open heart surgery and died that same day. Plaintiff testified that he took the 7th off for his father's surgery and later notified Streeter's secretary that his father had passed away and that he would not be in to work. (Pl.'s Dep. at 35-36).

Plaintiff received three bereavement days from the Township and then took some personal days as well. Plaintiff admits he did not advise the Township that he intended to take personal days prior to the end of his bereavement leave. (Pl.'s Dep. at 36).

Plaintiff returned to work on June 15, 2006, arriving at 8:30 a.m. (Pl.'s Dep. at 36) Plaintiff testified that he was terminated within a half hour of returning to work on June 15, 2006. (*Id*.). Specifically, after Plaintiff reported for work, Waites informed him that he had something he wanted to discuss. Although Plaintiff was unaware that the conversation was

being recorded, Waites recorded the conversation. (*See* Def.'s Ex. O; Pl.'s Ex. 14). After Waites admitted that he had listened to the CD in the Township-owned truck, Waites fired Plaintiff. (*Id.*).

During this litigation, Plaintiff asked the Township to identify each person who participated in the decision to discharge Plaintiff and was also asked to describe that person's participation. (*See* Ex. to Pl.'s Suppl. Submission at 5). The Township indicated that Waites "interviewed plaintiff and terminated his employment on 6/15/06" and further indicated that Streeter "was aware of the decision to discharge plaintiff." (*Id.*).

On October 22, 2006, Plaintiff filed this action against the Township, asserting the following three counts: "Plaintiff's MCLA §418.301 Workers' Compensation Disability Act Retaliation Claim Against Defendant" (Count I); "Violation of Family and Medical Leave Act 29 U.S.C. §2601 et seq Against Defendant Genesee Township - Retaliation Claim" (Count II); and "Violation of Family and Medical Leave Act 29 U.S.C. §2601 et seq Against Defendant - Interference Claim" (Count III).

Standard of Decision

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

*v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## **ANALYSIS**

A.   <u>Plaintiff's Claim of Retaliation for Filing a Workers' Compensation Claim</u>:

Plaintiff claims that the Township retaliated against him for filing a worker's compensation claim in violation of M.C.L. § 418.301(11), which provides:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

In order to establish a prima facie case of retaliation, Plaintiff must prove that: 1) he asserted his right to workers' compensation benefits; 2) the Township knew that he had asserted his right to workers' compensation benefits; 3) Plaintiff suffered an adverse employment action; and 4) there was a causal connection between the protected activity (*i.e.*, the assertion of Plaintiff's right to workers' compensation benefits) and the adverse employment action. *Dortman v. ACO Hardware, Inc.*, 405 F.Supp.2d 812, 824 (E.D. Mich. 2005); *Chisolm v. Michigan AFSCME Council 25*, 218 F.Supp.2d 855, 873-74 (E.D. Mich. 2002); *Chiles v. Machine Shop, Inc.*, 238 Mich.App. 462, 470 (1999).

"The *McDonnell Douglas* burden shifting approach applies to workers' compensation retaliation claims." *Chisolm*, 218 F.Supp.2d 855. Thus, once a plaintiff establishes a prima facie case, the *McDonnell Douglas* approach shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id*. "Once the defendant has met this burden of production, the plaintiff 'must be afforded the opportunity to

6

prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons." *Id.*

In its Motion, the Township asserts that it is entitled to summary judgment because Plaintiff cannot make out a prima facie case of retaliatory discharge.[1] The Township concedes that Plaintiff can establish the first three elements, but contends that Plaintiff cannot establish the fourth element – a causal connection between the protected activity (Plaintiff's assertion of his right to workers' compensation benefits) and his termination.

The Township notes that the case law reflects that the filing of a workers' compensation claim must be "a significant factor" in the adverse action. *See e.g., Dortman, supra.* It contends that the two comments by Waites are insufficient to establish a causal connection. It further contends that any argument that the Township failed to follow its progressive disciplinary procedures would be misplaced because there was no collective bargaining agreement in effect when Plaintiff was terminated and therefore any procedures in the union contract were not applicable.

Plaintiff acknowledges that, under Michigan law, the protected activity (*i.e.*, the leave) must be a "significant factor" in the discharge decision. (Pl.'s Br. at 17). He notes, however, that the Sixth Circuit has explained that "to be a significant fact [the protected activity] must be one of the reasons for the discharge. The plaintiff need not prove that the discharge would not

---

[1] Notably, the Township's motion for summary judgment does not proceed beyond the prima facie case. That is, the Township does not assert that even if Plaintiff could establish a prima facie case it would still be entitled to summary judgment because it had a legitimate nondiscriminatory reason for discharge and Plaintiff cannot prove pretext. Rather, it seeks summary judgment only on the basis that Plaintiff cannot establish a prima facie case.

7

have occurred absent of the protected activity." *Polk v. Yellow Freight Sys.*, 876 F.2d 527, 531 (6th Cir. 1989).

Plaintiff contends he has met that standard here. First, Plaintiff relies on the temporal proximity in this case, noting that Waites made the recommendation to terminate Plaintiff on the very day that Plaintiff went on leave, and then terminated Plaintiff almost immediately upon returning to work. Plaintiff claims that the temporal proximity alone is sufficient to survive summary judgment.

Plaintiff also relies on two statements by Waites to establish a causal connection: 1) Waites's comment that it "wasn't right" that Plaintiff went on leave, and 2) Waites's calling Plaintiff while he was on leave to tell him to come back to work, and his displeasure when Plaintiff indicated he would have to check with his physician. Plaintiff contends these comments are "direct evidence" that Plaintiff was retaliated against by Waites for having taken leave.

Plaintiff also contends that a causal connection can be established because the proffered reason for discharge - that Plaintiff owned the offensive CD - had no basis in fact. Plaintiff also contends that the Township did not follow its own progressive disciplinary policy and that also establishes causation.

"[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence." *Avery Dennison Corp.*, 104 F.3d at 861. The Court concludes that Plaintiff has done so here.

In the retaliation context, the Sixth Circuit has explained that where the temporal

proximity between the protected activity and the adverse action is acutely near in time, that close proximity is deemed indirect evidence of a causal connection. *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2007). Here, there is a strong temporal proximity between the protected activity and Plaintiff's termination. The evidence submitted indicates that Waites recommended that Plaintiff be terminated on the very same day that he began his leave, and then terminated Plaintiff almost immediately after he returned to work.

In addition to the temporal proximity, it is also undisputed that Waites made two negative comments concerning Plaintiff's leave. While those two comments do not constitute "direct evidence" of retaliation, they do constitute circumstantial evidence that Waites was displeased with the fact that Plaintiff was taking leave.[2]

The Court concludes that the very strong temporal proximity in this case, combined with those two comments by Waites, is sufficient to establish a causal connection necessary for Plaintiff's prima facie case. Accordingly, Defendant's motion shall be denied with respect to its request for summary judgment as to Count I.

B.   Plaintiff's FMLA Claims:

As explained in *Taylor v. Union Institute*, 30 Fed. Appx. 443, 452 (6th Cir. 2002), the FMLA creates prescriptive and proscriptive employee rights:

---

[2]In its Reply Brief, the Township tries to argue that Waites was not a "decision-maker" because he had to get authority to fire Plaintiff from Streeter, and therefore Waites's comments should not be considered. The Township offers no authority to support that position. Moreover, it is undisputed that Waites "called for" and requested the firing of Plaintiff, and that Waites ultimately was the one who fired Plaintiff.

9

> The prescriptive rights created by the Act provide "entitlements" to employees and "set floors for employer conduct." To prevail on the basis of the Act's prescriptive rights, the plaintiff need not show that she was treated worse than other employees, just that she was denied the Act's entitlements. Proscriptive rights, on the other hand, prohibit disparate employer conduct with regard to employees taking leave.

*Id.* Thus, "[t]here are two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. §2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. §2615(a)(2)." *Smith v. Aco, Inc.*, 368 F.Supp.2d 721, 731 (E.D. Mich. 2005). Here, Plaintiff asserts both a retaliation claim (Count II) and an interference claim (Count III) under the FMLA.

The parties agree that in order state a prima facie case for either type of claim, the plaintiff must establish that: 1) the employee engaged in a protected activity; 2) that protected activity was known to the employer; 3) the employer thereafter took an employment action adverse to the employee; and 4) there was a causal connection between the protected activity and the adverse employment action. *See Dortman, supra*.

In seeking summary judgment, the Township first contends that Plaintiff cannot meet the first two requirements. It contends that the only notice Plaintiff gave the Township was a disability certificate Plaintiff gave to Waites stating he needed to be off to see a neurologist. Citing an unpublished district court decision from Pennsylvania, *Mutz v. Agere*, as its authority, the Township contends that certain minimum requirements must be met in giving an employer notice of FMLA leave. The Township also takes the position that an employee may take either FMLA leave or leave that is paid by workers' compensation, but that FMLA leave cannot be taken if the employee is paid by workers' compensation. The Township cites no authority, however, for that position.

10

The Township then asserts that Plaintiff cannot establish the fourth element - a causal connection between the protected activity and Plaintiff's termination. The Township relies on the same arguments that it made with respect to the causal connection required for Count I.

Plaintiff responds to these arguments by asserting that he is not required to explicitly mention the FMLA in order to invoke the protections of the Act. Citing *Cavin, supra*, Plaintiff notes that an employee does not have to expressly assert his right to take leave as a right under the FMLA. In *Cavin*, the Sixth Circuit explained that "[b]ecause an employee need not expressly invoke the FMLA, '[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" *Cavin*, 346 F.3d at 723. Plaintiff asserts that there can be no question that the Township had sufficient information to reasonably know he was taking time off for a serious health condition because the testimony shows that Plaintiff gave Waites a written disability certificate from his doctor (Ex. D to Def.'s Br.; Pl.'s Dep at 63) and he also verbally told him he was going on leave due to his injury (*see e.g.*, Waites Dep. at 32-33, ). Thus, Plaintiff contends there is at least a question of fact as to whether the Township received sufficient notice.

The Court agrees that there is more than enough evidence to raise a genuine issue of material fact as to whether the Township was given enough information to reasonably apprise it that Plaintiff was taking time off due to a serious health condition. The Court further concludes that the Township's apparent position, that FMLA leave and the receipt of workers' compensation benefits are mutually exclusive, is without merit. The Township offers no authority to support that assertion, and various FMLA regulations appear to directly contradict

such a position. *See e.g.*, 29 C.F.R. § 825.702 ("An employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave may run concurrently . . .").

In addition, as stated *supra* in the section dealing with Count I, the Court concludes that Plaintiff has submitted sufficient evidence to meet the causal connection element of a prima facie case.

Accordingly, Defendant's request for summary judgment shall be denied.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED**.

> S/Sean F. Cox
> Sean F. Cox
> United States District Judge

Dated: November 14, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 14, 2007, by electronic and/or ordinary mail.

> S/Jennifer Hernandez
> Case Manager